(February 18, 1911.)

JOHN TURNER, Appellant, v. MARY C. GUMBERT, Respondent.

[114 Pac. 33.]

CONVEYANCE FOR LOVE AND AFFECTION — UNDUE INFLUENCE — PROOF NECESSARY TO ESTABLISH—RELATIONSHIP OF PARTIES—MENTAL CONDITION OF GRANTOR—PRIOR DECLARATIONS OF GRANTOR.

(Syllabus by the reporter.)

1. In an action to set aside a deed of gift from an aged woman to her daughter with whom she was living, the burden of proof of undue influence rests upon the party bringing such action.

2. With reference to the mental condition of a grantor, whose deed of gift is attacked on the ground of undue influence, the testimony of the officer who took the acknowledgment and of the witnesses who were present at that time is entitled to greater weight than the testimony of interested witnesses or of those who had not seen the grantor on the occasion of the execution of such deed or for a considerable time prior thereto.

3. Influence gained by kindness and affection will not be regarded as "undue" in the absence of any proof of imposition or fraud being practiced by the grantee of a deed of gift.

4. The confidential relations naturally existing between a mother and daughter do not of themselves raise any presumption of undue influence on the part of the daughter, nor does the love and affection ordinarily manifested between parent and child create such presumption.

5. Undue influence, to justify the setting aside of a deed, must have been such as to overcome the will of the grantor, and to destroy, to some extent, at least, the free agency of the grantor. It must further appear that the undue influence alleged was exercised at the time the act in question was done, and it will not be

presumed from the fact that the deed is made by a parent in favor of a child that it is unjust or unfair.

6. Declarations made by a grantor prior to the execution of a deed, and inconsistent with the execution of such deed, are not admissible in evidence.

7. The fact that a deed of gift, which was afterward attacked on the ground of undue influence, although delivered to the grantee at the time of execution, was not recorded by the latter until about the time of the death of grantor, does not affect the question of the validity of such deed.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

Action to set aside a deed on the ground of undue influence. Judgment for defendant. *Affirmed.*

Bogart & Reddoch, for Appellant.

If there is reason to believe that influence has been acquired over a person of weak mind, the transaction will be carefully scrutinized in equity. (13 Cyc. 586; *Bennett v. Bennett*, 65 Neb. 432, 91 N. W. 409, 96 N. W. 994.)

A strong presumption of undue influence may arise from the circumstances of a particular transfer which will require close scrutiny of the transaction and cast the burden of proving its fairness upon the grantee. (29 Cyc. 1657; *Gibson v. Hammang*, 63 Neb. 349, 88 N. W. 500; *Davis v. Dean*, 66 Wis. 100, 26 N. W. 737.)

Where a fiduciary relation existed between the parties in the transaction, the party who held the position of superiority and influence by virtue of the relation has the burden of proving the compliance of the transaction with equitable requisites. (6 Cyc. 335; *Whitely v. Whitely*, 120 Mich. 30, 78 N. W. 1009; *Ten Eyck v. Whitbeck*, 156 N. Y. 341, 50 N. E. 963; *Brummond v. Krause*, 8 N. D. 573, 80 N. W. 686; *Stepp v. Frampton*, 179 Pa. 284, 36 Atl. 177; *Todd v. Sykes*, 97 Va. 143, 33 S. E. 517; *Doyle v. Welch*, 100 Wis. 24, 75 N. W. 400; *Starr v. De Lashmutt*, 76 Fed. 907.)

Where confidential relations exist, as between parent and child, the law not only watches over the transactions of the

parties with great and jealous scrutiny, but it often declares such transactions absolutely void, where, between other parties, they would be open to no exceptions. (20 Cyc. 1217; *Reed v. Carroll,* 82 Mo. App. 102; *Matter of Rogers,* 10 App. Div. 593, 42 N. Y. Supp. 133; *June v. Willis,* 30 Fed. 11.)

Where the circumstances are such as to raise the presumption of fraud or undue influence, as where one of the parties is enfeebled by sickness or old age and the relation of the parties is one of special trust and confidence, the burden is upon the donee to show by clear, convincing and satisfactory evidence that the gift was the voluntary and intelligent act of the donor. (*Todd v. Grove,* 33 Md. 188; *Gay v. Gillilan,* 92 Mo. 250, 1 Am. St. 712, 5 S. W. 7; *Yosti v. Laughran,* 49 Mo. 594; *Coffey v. Sullivan,* 63 N. J. Eq. 296, 49 Atl. 520; *Parker v. Parker,* 45 N. J. Eq. 224, 16 Atl. 537; *Haydock v. Haydock,* 34 N. J. Eq. 570, 38 Am. Rep. 385; *White v. White,* 60 N. J. Eq. 104, 45 Atl. 767; *Nesbit v. Lockman,* 34 N. Y. 167; *Hutcheson v. Bibb,* 142 Ala. 586, 38 So. 754; *Nobles v. Hutton,* 7 Cal. App. 14, 93 Pac. 289; *Groff v. Stitzer,* 75 N. J. Eq. 452, 72 Atl. 970; *Hattie v. Potter,* 54 Wash. 170, 102 Pac. 1023.)

The testimony shows that Mrs. Turner was in a decrepit state, that she was old and illiterate, and under such circumstances it was the duty of the notary to explain to her the nature and effect of the instrument, which his testimony shows he did not do. (*Lyons v. Van Riper,* 26 N. J. Eq. 337; *Brummond v. Krause,* 8 N. D. 573, 80 N. W. 686; *Selden v. Myers,* 29 How. (U. S.) 506, 15 L. ed. 976.)

Mr. Cahalan testified that he read the deed over to Mrs. Turner, but it nowhere appears that she knowingly understood it, which in this character of cases is necessary. (*Hoghton v. Hoghton,* 15 Beav. 278, 51 Eng. Reprint, 545.)

The deed here in question is as near a testamentary act as one can be made, without putting it in the form of a will. The prior declarations of the donor, when taken in connection with all the other circumstances of the case, are entitled to their place in that chain of circumstances, and should be given such weight as the circumstances of the case will war-

rant.· (*Hobson v. Moorman*, 115 Tenn. 73, 30 S. W. 152, 3 L. R. A., N. S., 749, 5 Ann. Cas. 601; *Cato v. Hunt*, 112 Ga. 139, 37 S. E. 183; *Lemon v. Jenkins*, 48 Ga. 313.)

T. D. Cahalan and W. B. Davidson, for Respondent.

The only position which appellant can take in this case which would in any wise justify his contentions under the evidence would be that the mere giving of this deed would raise a presumption of undue influence and fraud, and would place upon the respondent the burden of rebutting such presumption. This rule is not sustained by the authorities. (29 Am. & Eng. Ency. of Law, 2d ed., 132; *Beanland v. Bradley,* 2 Sm. & Gibb. 343, 65 Eng. Reprint, 427; *Towson v. Moore*, 173 U. S. 17, 19 Sup. Ct. 332, 43 L. ed. 597; *Soberanes v. Soberanes*, 97 Cal. 140, 31 Pac. 910; *Oliphant v. Liversidge*, 142 Ill. 160, 30 N. E. 334; *Tenbrook v. Brown*, 17 Ind. 410; *Sanborn v. Goodhue*, 28 N. H. 48, 59 Am. Dec. 398; *Whelan v. Whelan*, 3 Cow. (N. Y.) 558; *Millican v. Millican*, 24 Tex. 426; *Mackall v. Mackall*, 135 U. S. 167, 173, 10 Sup. Ct. 705, 34 L. ed. 84–87; *Towson v. Moore*, 173 U. S. 21–24, 19 Sup. Ct. 332, 43 L. ed. 600.)

The record is absolutely silent as to any real proof of undue influence. (29 Am. & Eng. Ency. of Law, 2d ed., 110.)

In this case appellant failed to meet the rules laid down in such cases by this court in *Kelly v. Perrault*, 5 Ida. 221, 48 Pac. 45. The court says in that case: "Declarations of a grantor, made long prior to his deed, and inconsistent therewith, are not admissible for the purpose of impeaching said deed." (See, also, *Mallow v. Walker*, 115 Iowa, 238, 91 Am. St. 158, 88 N. W. 452.)

"Undue influence must be shown to have been exercised at the time of the execution and delivery of the instrument complained of or it will not be set aside or canceled in a court of equity." (*Curtis v. Kirkpatrick*, 9 Ida. 629, 75 Pac. 760; *Delaplain v. Grubb*, 44 W. Va. 612, 67 Am. St. 788, 30 S. E. 201.)

"The influence must amount to force and coercion, destroying free agency as to the very act, and that the exertion of

undue influence upon the very act must be proved." (*Goodwin v. Goodwin,* 59 Cal. 560; *Estate of Carpenter,* 94 Cal. 412, 29 Pac. 1101; *Towson v. Moore, supra.*)

BUDGE, District Judge.—This case is here on appeal from a judgment and order of the district court of the third judicial district in and for the county of Ada, overruling a motion for a new trial, and from the judgment.

The action is brought for the purpose of canceling and setting aside a deed made by Lucinda Turner, delivered to the respondent on the 17th day of September, 1907. The said deed is sought to be set aside and declared void for the reason that the same was obtained by the respondent by undue influence.

It is admitted in the pleadings that the appellant and respondent are brother and sister and the only surviving heirs of Lucinda Turner, deceased. It is also admitted that the said Lucinda Turner was, in her lifetime, the owner of lots 5 and 6 in block 89 of the original townsite of Boise City. It also appears that on or about the 10th day of June, 1885, the respondent with her family resided in the state of California, and that on the 28th day of June, 1885, she moved from the state of California to Boise City, and into the home of the said Lucinda Turner, and there resided continuously until the 11th day of May, 1909, upon which date the said Lucinda Turner died. It is also admitted that the said Lucinda Turner was eighty-three years of age at the date of her death.

It will not be necessary for us to set out in detail all the allegations of the complaint or the denials and affirmative matter contained in the answer. We will content ourselves with stating the material issues.

The appellant seeks to have said deed canceled and declared void for the reason, as alleged by him, that the respondent secured the execution and delivery of the said deed by undue influence, and that the said undue influence consisted of threats, coercion, persuasion, entreaties and importunities which influenced and controlled the said Lucinda

Turner from the 28th day of June, 1885, until the date of the execution of the deed in question, during which time the respondent and her family lived with and in the home of said Lucinda Turner, and that while under the influence and control of the respondent, the said Lucinda Turner made and delivered the said deed.

The appellant alleges in his complaint that by reason of the age of the said Lucinda Turner, she was weak-minded, feeble in health, unable to see and hear except with great difficulty, could neither read nor write, nor understand writing when read to her, and by reason of her infirmities feared the respondent, and was therefore easily induced to execute the deed in question; that she was powerless to resist the influence and control of the respondent, and that she made and delivered the deed in question without exercising her free agency and against her will. Appellant also alleges in his complaint that the respondent exclusively managed and conducted the business affairs of the said Lucinda Turner, and further alleges that the said deed so made and delivered was not filed for record until more than eighteen months thereafter, but was by the respondent herein intentionally, knowingly and fraudulently concealed and secreted for the purpose of cheating and defrauding the appellant of his share of said property.

The respondent in her answer specifically denies that she and her family moved into the home of the said Lucinda Turner against the will or protest of the said Lucinda Turner or against her wishes; but, on the contrary, alleges that she moved into her mother's home at her special instance and request, and remained there at her urgent solicitation, and specifically denies that she exercised or attempted to exercise undue influence or control over her mother by means of threats, coercion, persuasion, entreaties, importunities, or in any other manner, or at all, and respondent specifically denies that said Lucinda Turner was completely or at all under her influence and control, and that she was powerless to resist the respondent, or that respondent managed and controlled the business affairs of her mother. The respondent also denies

that the said Lucinda Turner was weak-minded, feeble in health or unable to see or hear except with great difficulty, or that by reason of her infirmities or mental condition she could have been or was easily influenced or influenced at all by the respondent with reference to her property. The respondent denies specifically that she exercised any influence or control over her mother in the making and delivering of said deed, or that she abused her or coerced her or induced her to make and deliver the same, and alleges that when said deed was delivered, her mother was capable and competent to transact her business and to comprehend and understand the consequences of all her acts, and that she well understood what she was doing when she executed and delivered said deed to the respondent and excluded the appellant from any share or interest in said property. The respondent alleges that her mother deeded said property to her because of respondent's having had the exclusive care and treatment of her mother for a period of nearly twenty-four years, and because of the love and affection that she entertained for the respondent.

Respondent denies that she fraudulently concealed or secreted the said deed, or fraudulently failed to file the same for record for more than eighteen months, or for any time whatever, and alleges the facts to be that on the 17th day of September, 1907, shortly after the delivery of said deed, her mother requested her not to place the same on record until after her death, and assigned as a reason therefor that appellant would cause her serious unpleasantness.

The court, after hearing all of the evidence, entered its judgment in favor of the respondent and against the appellant, who prosecutes his appeal in this court.

The appellant in his brief assigns and specifies under numerous heads, first, the insufficiency of the evidence to justify the findings and judgment of the court below; and, second, that the court erred in deciding questions of evidence during the trial.

We will not discuss separately the various subdivisions under the first or second assignments of error, but will discuss all of the assignments together.

The evidence, briefly stated, is that Lucinda Turner was the mother of the appellant and respondent; that they were her only living children and heirs at law; that the appellant is a man 63 years of age; that since he was 26 years of age, he has not lived with his mother, but has seen her during her lifetime sometimes once a month, sometimes two or three times a month, and at times five or six, and as much as nine months would elapse that he would not see her. The testimony of the appellant with reference to the physical condition of his mother is based solely upon the observations that he made during his occasional visits. The other witnesses testifying on behalf of the appellant based their testimony upon observations made by them either upon occasional visits to the home of Lucinda Turner, or upon meeting her at the home of her friends. The testimony of J. K. Turner, a son of the appellant, as to the condition of Lucinda Turner up to May, 1898 (about twelve years prior to the trial of this cause), would not be entitled to much weight. However, his testimony shows that the feeling existing between Lucinda Turner and the respondent herein was much different from that testified to by other witnesses on behalf of the appellant. He states that he had never seen or heard of the respondent and her mother quarreling, or that the respondent, to his knowledge, during the time that he lived with his grandmother, Lucinda Turner, attempted in any manner to influence her against his father.

The witness, Defonda Turner Franklin, a daughter of the appellant, testified that she lived with her grandmother, Lucinda Turner, when she was about six years of age, and that she remained with her grandmother about a year, when she returned home, and that she did not see her grandmother for seven years. Still she testified that she remembered certain conversations had at that time between the respondent and her grandmother to the effect that the respondent at that time told her grandmother that her father was robbing her

and was a drunkard, etc. We can hardly believe that the witness would remember a conversation between her grandmother and the respondent, alleged to have occurred when she was six years of age, for a period of eighteen years. This witness also testified that at the time she was six years old she remembers that respondent collected the rents due to her grandmother and took charge of her grandmother's business. However, she also testified that she never knew the respondent and her grandmother to quarrel. In concluding her testimony she says that she had not seen her grandmother for fifteen years prior to the time she made her deposition in this case. We hardly think her testimony with reference to her grandmother's mental or physical condition, or her recollection of what happened when she was six years old, would enlighten the court in reaching a proper conclusion as to the condition of Lucinda Turner at the time that the deed in question was executed.

Mrs. Alice Turner, wife of appellant, testified that she had not seen Lucinda Turner very often during her lifetime; that the last time she saw her was during the year 1905, five years before the trial of this case. She testified that at that time Mrs. Turner was pretty feeble and weak. However, her testimony shows that when Mrs. Turner visited her in 1905, she walked about sixteen blocks and after remaining a short time returned home, making in all about thirty-two blocks that this old lady walked in order to visit her son and daughter in law; and after her visit was over, in the feeble condition in which they testified she was, without the aid or assistance of anyone except her son, who went with her but a short distance toward her home, she was permitted and was able to make the return trip to her own home alone. It would hardly be consistent for us to presume that Mrs. Turner was in such a condition at that time that she had no control over her own actions and was entirely under the influence and control of her daughter, the respondent.

The testimony shows that the appellant and his mother were never closely associated with each other after appellant left his mother's home. It is quite apparent from the testi-

mony that he was willing that his mother should make her way in the world as best she might. There is other testimony in the record tending strongly to show a lack of affection upon the part of appellant for his aged mother, but for the purpose of this case we do not deem it necessary to discuss this phase of the testimony.

There is some testimony in the record given by the witnesses for the appellant that we do not deem material because it is based upon the opinion of the witnesses who had no means of knowing what the mental or physical condition of Lucinda Turner was at the time that the deed in question was executed.

The evidence shows that when the respondent came to Boise from California, she went directly to the home of her mother, where she resided with her mother for something like twenty-four years, during which time there existed between them a strong affection and in each other they had implicit confidence. It is in the evidence that the mother complained because the daughter would not permit her to wash dishes, scrub floors or perform other menial labor, and from the evidence we can reach but the one conclusion, that the respondent did all in her power, as a dutiful child, to secure the happiness and comfort of her aged mother.

"The burden of proof of undue influence in a gift from an aged woman to her daughter with whom she lives rests upon the party who brings the action to set aside the gift." (*Towson v. Moore*, 173 U. S. 17, 19 Sup. Ct. 332, 43 L. ed. 597.) And the question is: Has the appellant established by a preponderance of the testimony that the grantor (Lucinda Turner) was not using her free will at the time that the deed in question was executed?

In the case of *Towson v. Moore, supra*, the court says:

"It has since, more than once, been recognized by this court, that 'the influence for which a will or deed will be annulled must be such as that the party making it has no free will, but stands *in vinculis*' "; and cites in support of this doctrine *Conley v. Nailor*, 118 U. S. 127, 6 Sup. Ct. 1001, 30 L. ed. 112; *Ralston v. Turpin*, 129 U. S. 663, 9 Sup. Ct. 420,

32 L. ed. 747; *Mackall v. Mackall,* 135 U. S. 167, 10 Sup. Ct. 705, 34 L. ed. 84.    (See, also, the case of *Estate of Carpenter v. Bailey,* 94 Cal. 406, 29 Pac. 1101.)

In order to ascertain what the mental condition of the grantor was at the time the deed in question was executed, we think that the testimony given by the officer who took the acknowledgment and by the witnesses who were present at that time, is entitled to peculiar consideration and to greater weight than the testimony of interested witnesses or the testimony of those who had not seen Mrs. Turner for many years. (*Delaplain v. Grubb,* 44 W. Va. 612, 67 Am. St. 788, 30 S. E. 201; *Kelly v. Perrault,* 5 Ida. 221, 48 Pac. 45.)

We therefore quote from the testimony of Jonas W. Brown, the notary who took the acknowledgment, also from the testimony of T. D. Cahalan, who was present at the time the acknowledgment was taken.    We conclude from this testimony that the grantor understood fully what she was doing at the time she executed the deed, and that she had done it after years of deliberation and with a full understanding of the consequences of her act.

Jonas W. Brown, sworn on behalf of defendant, testified as follows:

"I am acquainted with the defendant, Mary C. Gumbert. I knew Lucinda Turner in her lifetime.    I was not much acquainted with her, but I knew her.

"Q.    I hand you a paper marked defendant's exhibit No. 1 for identification, purporting to be a deed from Lucinda Turner to Mary C. Gumbert.    Just examine that paper and state whether or not you ever saw it before.

"A.    Yes, sir, I did.    That is my notary certificate.    That acknowledgment was taken on the day that it purports to be taken there.    Taken at the house of Mr. Gumbert. . . . . Mrs. Turner and Mr. Cahalan and I think a little girl was present when this deed was executed and the acknowledgment taken.    The deed was signed in my presence.    Well, when we went to the house to acknowledge the deed, Mr. Cahalan told her that he had made out the deed and says he, 'I will read it to you now,' and he read it to her very carefully and

told her before commencing the reading, 'Now, if this is not as you want it, I will make it as you want it.' When he got through he asked her if that was as she wanted the deed and she said it was just as she wanted it, and I took the acknowledgment then, and then she called her daughter in—her daughter was out in another room—Mrs. Gumbert. And she gave her the deed and says, 'I have been intending to do this for several years and I am glad it is done now.' . . . .

"Q. Did I understand you to say who handed the deed to Mrs. Gumbert?

"A. Well, I think she picked it up, off of the table; I don't know but I handed it to her, I am not certain, either I done it or Mr. Cahalan, I don't know which; I acknowledged it after it had been read; he was standing at the table at the time. Mrs. Turner called Mrs. Gumbert into the room. I think Mrs. Turner handed the deed to Mrs. Gumbert. I did not explain the nature of the deed to Mrs. Turner at the time I took the acknowledgment because Mr. Cahalan read it over to her carefully and I asked her if she understood what it was and she said she did. After it was acknowledged I stayed probably two or three minutes. They commenced talking about their trip over the plains and I excused myself and went away. . . . . She seemed to understand everything that was said to her. I talked to her in an ordinary tone of voice and she understood all that I said to her."

T. D. Cahalan, a witness sworn on behalf of defendant, testified as follows:

"I was acquainted with Lucinda Turner since 1864. I would frequently meet her and especially in the past 35 years. I frequently went to her house to see her,—to see how she was getting along. I couldn't state how many times. I saw her frequently during the last five or six years.

"Q. Now, Mr. Cahalan, I will hand you a paper admitted in evidence as defendant's exhibit No. 1 and ask you to examine that paper and state if you know whether or not you prepared the instrument.

"A. I prepared that instrument. A few days before the execution of this instrument a grandchild of the grantor in-

formed me that the grantor, Mrs. Turner, wanted to see me, and I went to her house on the corner of 8th and Franklin streets. Mrs. Pefley took me in where Mrs. Turner was, and says, 'Grandma, here is Mr. Cahalan.' I shook hands with Mrs. Turner, and says I, 'Tootie told me you wanted to see me.' 'Yes,' she says, 'I sent for you. I wanted to see you, wanted to talk to you.' 'Very well.' 'Well,' she says, 'It is a long time since we talked about the plains,' something about the plains. I says, 'Yes,' says I, 'What can I do for you, Mrs. Turner?' She then asked me if I fixed the business for the man Williams. I told her yes, I did. 'Well, he had no trouble, had he?' 'None,' I says to her. 'Do you want me to write a will for you?' 'Well, I don't know whether it is a will; how did you fix the Williams business?' I then told her how I fixed the Williams business, that it was done by deed. 'Well,' says I, 'you can make a will or you can make deeds,' and I used the word 'deeds' as I knew she had two children. 'Well, I want to give what little I have to Kit.' I didn't know at that time who Kit was and I had to ask her and she said Mrs. Gumbert. 'Well,' says I, 'I think a deed will be better than a will, as the will would have to be probated and that would cost something to probate the will.' 'Well, I want to fix it up so there won't be any trouble when I am dead.' 'Well,' says I, 'I will fix it up as well as I can for you that way.' She then told me to prepare a deed of her property; I asked her what it was and she told me these two lots here on this corner; I knew the numbers of the lots, being familiar with the lots, and I told her all right. 'But,' said I, 'Mrs. Turner, do you want anything else prepared besides a deed?' 'Why, isn't that all?' 'Well,' said I, 'for Mr. Williams I prepared deeds and then I prepared a lease from the children that he deeded to, a life lease, he was to pay,' said I, 'a dollar on the first day of each June during the life of the lease and the lease was to live as long as he lived'—I then said to her, 'If you make this deed, you probably had better have a lease.' 'No, I am not afraid of Kit. Kit has taken care of me over twenty years and she will take care of me all my life.' She wanted a deed so that was set-

tled. And we then talked about crossing the plains; told me about something I did when we crossed the plains with an Indian. I then left and went to the office and prepared this deed on the 17th. I think immediately after dinner I requested Mr. Brown to go with me to Mrs. Turner's and take the acknowledgment on this deed. We went there and I read that deed—I read it to Mrs. Turner carefully. When I got through, said I, 'Now, Mrs. Turner, if there is anything there that you don't want, I am here to correct it for you, change it.' She says, 'Mr. Cahalan, that is what I want.' I read it carefully and I advised her of her rights and what she was doing, that she was deeding everything she had away; she said she was not afraid of Kit, that if she had not anything Kit would take care of her. I then witnessed her signature. She made that signature, she touched the pen while I made that mark. I witnessed the mark on the instrument. I was present when the acknowledgment was taken. As soon as it was certified to by the notary, it was handed to me and I got up and handed it to Mrs. Turner. She was sitting not as far from me as to the judge now,—probably two-thirds as far, and I got up and handed it to her and she handed it to Kit. Mrs. Gumbert came in and she handed her the deed and Mrs. Gumbert said, 'Thank you, Mother.' 'You're welcome; I intended to do that a good while ago.' Mrs. Gumbert took the deed and after awhile they went off, all of them, and I probably stayed three-quarters of an hour, I think, half or three-quarters of an hour—talking about the plains. Mrs. Turner said that; she either said a long time ago or a good while ago, I am not sure which expression she used."

Influence gained by kindness and affection will not be regarded as "undue" if no imposition or fraud be practiced, and from a careful investigation of the record in this case, we have been unable to find that the respondent, at any time during all of the years that she cared for her mother, practiced imposition or fraud, but, on the contrary, was kind and affectionate and did everything she could for the comfort and care of her aged mother, and even though this induced

her mother to make the deed in question, and although it might be admitted that it was an unequal and unjust disposition of her property in favor of the daughter, if such a disposition was voluntarily made, the confidential relations existing between the mother and her daughter would not alone furnish any presumption of undue influence. The fact that the mother and daughter were constantly together would naturally cause a stronger affection to exist for the daughter than for the son, and it would have been strange if such a result had not followed. But such a condition falls far short of presenting the "undue influence" which the law denounces. To defeat a conveyance under such circumstances, it was incumbent upon the appellant to show by a preponderance of the testimony imposition, fraud, importunities, duress, or something of that nature.

The supreme court of California in the case of *Goodwin v. Goodwin,* 59 Cal. 561, a similar case, announces the following doctrine:

"Undue influence, to vitiate an act, must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment; it must not be the mere desire of gratifying the wish of another, for that would be very strong ground in support of a testamentary (or other) act; further, there must be proved that the act was obtained by this coercion, by importunity which could not be resisted; that it was done merely for the sake of peace; so that the motive was tantamount to force, or fear."

A deed will not be set aside although it is apparent that the grantor is physically unable to look after her property, if she still retains a full comprehension of the meaning, design and effect of her acts at the time of the execution of the deed. In other words, undue influence, to render a deed void, must be of a character to deprive the grantor of her free agency. (*Shea v. Murphy,* 164 Ill. 614, 56 Am. St. 215, 45 N. E. 1021.)

The supreme court of Iowa, in the case of *Mallow v. Walker,* 115 Iowa, 238, 91 Am. St. 158, 88 N. W. 452, said:

"Undue influence, to justify the setting aside of a deed, must have been such as to overcome the will of the grantor, and to destroy, to some extent, at least, his free agency. It must further appear that the undue influence was exercised at the time the act referred to was done."

And it will not be presumed, from the fact that the provision made is by a parent in favor of his child, that it is unjust or unfair. (See, also, *Curtis, Admr., v. Kirkpatrick,* 9 Ida. 629, 75 Pac. 760.)

There are numerous other authorities that we might cite in this connection, but we think that the rule is so well settled that it is unnecessary to go further in support of the position taken with respect to this phase of the case. There is absolutely no evidence in the record which shows that at the time the deed in question was executed the grantor was under the undue influence of the respondent; but, on the other hand, the preponderance of the evidence conclusively shows both by the testimony of the witnesses to the execution of the deed and other witnesses testifying in the case, that at the time the grantor executed the deed in question it was her free and voluntary act, and was made in consequence of her preconceived determination to give the property conveyed to her daughter, which was in keeping with a feeling of gratitude and appreciation for years of devotion and sacrifice upon the part of her daughter.

The second assignment of error is that the court erred in refusing to admit testimony as to the declarations made by the grantor prior to the execution of the deed in question, and inconsistent with the execution of such deed. We think this position is not well taken, and the same principle has heretofore been decided by this court in the case of *Kelly v. Perrault,* 5 Ida. 243, 48 Pac. 45. (See, also, *Mallow v. Walker,* 115 Iowa, 238, 91 Am. St. 158, 88 N. W. 452.)

We are of the opinion that there is no merit in counsel's contention that the deed was not recorded at the time of its delivery. It appears from the testimony that when the deed was executed, it was delivered to the grantee and by her with-

held from record until at or about the time of the death of the grantor. Her action in this regard in no way affects the questions involved in this case.

We find no error in the record.

The judgment of the trial court is affirmed. Costs are awarded to the respondent.

Stewart, C. J., and Ailshie, J., concur.