501 P.2d 199

Helen I. MOLLENDORF, Plaintiff-
Respondent,

v.

George DERRY et al., Defendant-
Appellants,

and

Gerald E. Browning, Administrator of the Es-
tate of Charles Miller, Deceased,
et al., Defendants.

No. 10905.

Supreme Court of Idaho.

Sept. 20, 1972.

**2**

McFadden & Park, St. Maries, for defendants-appellants.

E. L. Miller, William D. McFarland, Coeur d'Alene, for plaintiff-respondent.

McFADDEN, Justice.

The parties to this action in the district court were the heirs (seventeen nieces and nephews) of Charles Miller, and the administrator of Miller's estate. Plaintiff-respondent Helen I. Mollendorf, a niece, brought the action to quiet title to 160 acres of Benewah County land, relying on a deed executed by her uncle, Charles Miller, which purported to convey the land and also the personal property contained in the dwelling house to her. The administrator and certain of the heirs contested the action. After trial to the court, judgment was entered in favor of respondent Mollendorf. Thereafter a motion for new trial was denied. Eleven of the heirs, but not the administrator of the estate, appeal from the judgment and order denying a new trial, raising nine assignments of error.

Charles Miller, the uncle, died intestate on October 25, 1968. For several years prior to his death Miller had been in poor physical health, having undergone several major surgical operations. In September, 1967, Miller was recuperating from a leg amputation and staying with his niece, Helen Mollendorf. While staying in her home, on September 5, 1967, Miller executed a quitclaim deed to his 160 acre ranch and the house and outbuildings situated thereon together with the personal property in the buildings. Miller retained a life estate for himself.

The record clearly shows, and the court found, that respondent maintained a close, confidential relationship with her uncle up to the time of his death. Respondent testified that her own father died when she was quite young and since that time she had fondly regarded her uncle Charles as a fatherly advisor. The court also found that two other nieces enjoyed similar relationships with their uncle.

The property covered by the disputed deed is 160 acres of wooded land near Sanders, Idaho, on which Miller lived and made his living during his lifetime. Apparently this land had been in the family for a long period of time. On it was situated the family cemetery. Various of the witnesses testified that Miller expressed the wish that this land "remain in the family" after his death.

In early September, 1969, according to respondent, her uncle requested that she procure a deed form and fill out the property description on the form as he dictated it explaining it was his desire that the land would become hers after his death. Respondent, who had experience as a real estate agent, typed in the description on the deed form as instructed. Later on the same day Miller both signed it and delivered the deed to her in the presence of two non-family witnesses. About two months after Miller's death and after probate proceedings were instituted, respondent produced the unrecorded deed and claimed sole possession of the land.

Appellants claim that the facts indicate Miller did not act freely in signing the deed. Thus they stress that Miller had only an eighth grade education, whereas respondent was experienced in business, that he was in ill health, and that he sought no third party advice or counsel before signing the deed. All these facts are undisputed. A fact also not disputed is Finding of Fact IV entered by the district court:

"CHARLES MILLER was a bachelor. During his lifetime and until his death in October of 1968, he was an independent and strong willed individual. Until his death he conducted his own business affairs independently of other persons and was mentally competent. Although he did suffer from physical illnesses which required medical attention, these illnesses in no way affected his mental acuity."

While it is apparent Miller did not get outside advice, the record shows, and the court found (a finding not challenged on appeal), that subsequent to the execution and delivery of the deed Miller informed others in the family that he had deeded the property to respondent. Likewise unchallenged is the court's finding that prior to September 5, 1967, Miller had stated to several of the heirs his intent to deed the land to respondent.

Appellants contend that despite these facts respondent did not sufficiently over-come by her proof the inference of fraud or undue influence raised by these facts, arguing that respondent in this situation labors under a presumption of undue influence which shifts the burden of proof to her. Respondent's position is that Idaho has no presumption of fraud where a deed has been given in circumstances involving only a confidential relationship.

■ The fact that respondent maintained a confidential relationship with the grantor who in turn was a close relative does not establish, standing alone, grounds for voiding a conveyance. Dickey v. Clarke, 65 Idaho 247, 142 P.2d 597 (1943); Turner v. Gumbert, 19 Idaho 339, 114 P. 33 (1911). It is doubtless an ordinary occurrence when an older person conveys property to another relative under circumstances where a confidential relationship exists, that the grantor was motivated by affection or even gratitude does not establish undue influence. 23 Am.Jur.2d, Deeds, § 148.

■ The policy of the law is not to defeat a grantor's intent. Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209 (1952). The law does, however, provide protection to a grantor or his heirs where the circumstances show the grantor's mental condition or capacity was such that he could not understand the nature and effect of his act of conveyancing. Kelly v. Perrault, 5 Idaho 221, 48 P. 45 (1897). Nor is physical infirmity necessarily an indication of mental incapacity. Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965). Protection is also afforded when the grantor's own will is not his own in the sense that he is not a free agent due to the acts or influence of another. Turner v. Gumbert, *supra*; Curtis v. Kirkpatrick, 9 Idaho 629, 75 P. 760 (1904); *see* Chamberlin v. George, 63 Idaho 658, 125 P.2d 307 (1942).

■ Although the basic mental capacity of the grantor is not at issue here, one must examine the record to determine what indication there is that Miller's own will was not operative due to what is labeled

**4**

"undue influence." Appellants have pointed to Miller's modest education and respondent's relative sophistication and experience in business. This, in itself, is not determinative. The record · shows that Miller was capable of making decisions regarding the management of his property up to the time of his death. It also appears without contradiction that he never relied on the advice of respondent or anyone else in the family regarding his affairs. Further, the district court found Miller to have had his own opinions to which he firmly adhered to the end.

▮▮▮ That Miller apparently did not have advice from another and that respondent prepared the deed form might naturally create suspicion of undue influence, a fact respondent recognizes. *See* Chamberlin v. George, *supra*. However, the district court found upon substantial evidence that Miller intended to deed the land to respondent and that it was Miller who asked or prompted respondent to prepare the deed according to his terms and wishes. The two witnesses to the deed stated that after they arrived to pay a social call Miller asked respondent to produce the deed and took that opportunity for the formal signing. They stated that thereafter Miller handed the deed to respondent. Their testimony certainly has a bearing on whether Miller acted freely. Turner v. Gumbert, *supra*. Thereafter, as noted earlier, Miller told another niece that he had deeded the property to respondent and such action reflected his intent.

The conclusion that there was no fraud or undue influence is fully sustained by the facts in this record. Thus, there was no error in the district court's conclusion to that effect.

▮▮▮ Appellants complain of certain alleged irregularities in the deed as vitiating the instrument. First, they point to the certain variances in the property description of the purported deed versus the correct legal description. The district court found, however, that the language was sufficiently clear in the deed to identify the land conveyed as that owned by the grantor. This finding was not assigned as error on appeal and thus appellants' contention in this regard will not be discussed. At trial appellants apparently also contended the lack of acknowledgment before a notary by itself vitiated the deed. Chapters 5 and 6 of Title 55, I.C., do not require such an acknowledgment, except for the purpose of recording; hence, the district court correctly rejected this contention.

The remaining substantive issue is the court's denial of appellants' request for imposition of a constructive trust on the property covered by the deed for the benefit of all the heirs. Appellants point to statements in the record that Miller's intention was that the property be kept in the "family" and not be sold to outsiders. The term "family" was disputed at trial. Respondent used the term to mean her own issue while appellants used it to mean all the heirs of Miller.

Appellants stress that the location of the family cemetery on the acreage was the reason for Miller's wanting the land to stay "in the [entire] family."

▮▮▮ Appellants have failed to show on the record anything more than "vague, indefinite, ambiguous or casual statements or declarations" to support their position and as such fail in their attempt to impose a trust. Dunn v. Dunn, 59 Idaho 473, 83 P.2d 471 (1938). To repeat, Miller on several occasions stated he wished the land to go to respondent. It is reasonable to conclude as did the district court that Miller, having been close to respondent during her life, would regard her as one able to preserve the cemetery for its sentimental value. Consequently, the record lacks the required facts which demonstrate Miller wished all his nieces and nephews to hold

the property jointly. There must be clear, cogent, convincing evidence to give rise to a resulting or constructive trust. Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380 (1958). Appellants have failed to present evidence comporting with this test.

The remaining issue is whether the district court erred in denying appellants' motion for a new trial. Respondent correctly notes that the record on appeal fails to contain a certificate complying with Supreme Court Rule 35 relating to contested motions. However, the clerk's certificate does state that the record contains all affidavits filed in support of the new trial motion. And too, respondent does not allege the record is otherwise deficient. Thus the Court will overlook the lack of the certificate and review the assignment of error.

The motion for the new trial essentially sets forth the same allegations answered previously in this opinion. No other reasons were set forth to the district court. In that the Court has concluded the record supports the district court's judgment on the merits and it is not alleged that the district court abused its discretion in denying a new trial, the order denying a new trial will stand.

Appellants' assignment of error that the court erred in not granting defendants' (appellants') motion for involuntary dismissal not having been separately argued and authorities duly cited will be treated by the Court as included within the argument relating to the new trial discussion, *supra*. For the same reasons, there was no error by the court in denying this motion.

The judgment of the district court and order denying a new trial are affirmed. Costs to respondent.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.