## HOUGH *v.* STONE.

*Landlord and tenant—Cropping arrangements—Contract severable as to different crops—Breach for failure to furnish harvesting crates—Charge to jury upon custom relative to number of crates erroneous—Elements necessary to be established to warrant charge upon custom—Duty to furnish all crates reasonably necessary, when—Court, and not jury, to construe unambiguous written contract— Measure of damages for failure to furnish harvesting crates—Damages for expense of employing additional labor limited, how—Difference between value of share with crates furnished and crates required—Measure of damages for loss of unharvested crop—Duty to mitigate damages.*

1. A contract of lease containing different provisions with reference to cropping arrangements, is severable as to its provisions relative to one of the crops, where the provisions with reference to such crops are wholly independent of and unconnected with the provisions relating to the other crops.

2. In action for lessor's failure to furnish crates for harvesting onions, a charge as to neighborhood custom relative to number of crates to be used is erroneous, where there was a lack of proof as to certainty, uniformity and

generality of such custom, and such elements were not embraced in the charge.

3. To warrant charge on custom, the evidence must establish the elements requisite to constitute a valid custom, which must be clarified and explained in the charge to the jury.

4. Under a contract of lease requiring the lessor to furnish crates for harvesting onions, if no custom existed, lessor must furnish all crates reasonably necessary under the circumstances.

5. Court must construe contract of lease which is in writing and unambiguous.

6. In an action against the lessor for failure to furnish crates for harvesting onions under a contract of lease, a charge permitting the jury to examine the contract and find whether lessor had complied with it is erroneous, as it leaves the interpretation of the contract to the jury.

7. In an action against the lessor for failure to furnish crates to harvest onions, damages for additional expense of employing labor occasioned by lack of crates must be limited to such as was reasonable and necessary.

8. The measure of damages for lessor's failure to furnish crates to harvest onions under contract of lease is the difference between the fair market value of lessee's share at the time and place of division with number of crates actually furnished, and fair market value thereof if lessor had furnished the required number of crates.

9. The measure of damages for lessor's failure to furnish crates for harvesting onions under contract, if there was total loss of unharvested crop due to such failure, is the market value thereof at the time and place of division if lessor had furnished required number of crates.

10. Lessee must make reasonable efforts to mitigate damages resulting from failure of lessor to furnish crates for harvesting onions under contract.

(Decided June 25, 1925.)

ERROR: Court of Appeals for Huron county.

*Messrs. Young & Young,* for plaintiff in error.

*Messrs. Rowley & Carpenter,* and *Mr. Allan G. Aigler,* for defendant in error.

WILLIAMS, J. Amanda Stone, as plaintiff, brought an action in the court below against Frank S. Hough, as defendant, for breach of a contract of lease on certain farming property. This contract of lease was in the nature of a cropping arrangement covering about 145 acres of land, and provided that the plaintiff should perform all labor pertaining to the planting, caring for, and harvesting of the crops, and that the same should be divided equally when harvested. Among other provisions, it contained one with reference to a crop of onions, which reads as follows:

"It is agreed that from 30 to 50 acres shall be put to onions, first party to furnish seed, fertilizer and crates for caring for the crop. Second party shall perform all labor, plow, fit and put the land in proper condition, haul all the manure, also haul all the fertilizers from Willard. Second party shall properly care for the growing crops and in event of failure to do so, first party shall take care of such crops and second party shall then and there forfeit all rights in and to such crops. Onions shall be pulled, topped, crated and divided equally in the field."

Plaintiff's action below was based upon the ground that the defendant had broken his contract in failing to furnish the crates for harvesting the onions which he was required to furnish under the contract of lease. Upon the trial of the case below, the jury returned a verdict for $950 in favor of the plaintiff. After the motion for new trial

was overruled and judgment entered thereon, Frank S. Hough, as plaintiff in error, prosecuted this proceeding to reverse the judgment of the court below.

Two questions are presented by the record which deserve consideration: First, was the plaintiff required to prove that she had fully complied with the contract of lease with respect to all the crops therein provided for; and, second, did the court err in its charge to the jury?

1. As to the first question, we are of the opinion that the contract of lease was severable as to its provisions in regard to the crop of onions, and, while the defendant might counterclaim for damages for breach of the provisions of the lease relating to other crops, the claim of the plaintiff would not be defeated, if otherwise substantiated under the law and the evidence, merely because she did not show a substantial performance of the contract of lease with reference to other crops. We think the situation presented may be likened to a case where parties enter into a contract for the building of five dwelling houses, differing in character each from the other, where the provisions with reference to the building of each dwelling house are as separate and distinct as if there were five separate contracts, one for each dwelling house. Under such circumstances the party contracting to do the building might recover the contract price for the building of one dwelling house by showing substantial compliance with the contract with reference to that dwelling house, and if he had failed in the performance of his contract with respect to one or more of the other houses, the owner might

counterclaim for a breach, but the failure to comply
with the contract with respect to the other buildings
would not, of itself, defeat the contractor in the
recovery for the contract price relating solely to
the dwelling house regarding which he had sub-
stantially performed his contract. There was no
error committed by the court in its ruling with
reference to the question of a substantial com-
pliance of the plaintiff with the provisions of the
contract with reference to the crops other than
the onions.

2. With reference to the charge of the court,
we will consider it under three separate subdivis-
ions: First, the charge with reference to custom;
second, the charge with reference to the contract
of lease, so far as it related to the furnishing of
crates; third, the charge with reference to damages.

### The Charge with Reference to Custom.

We think it was proper in this case to submit
to the jury, if the evidence warranted it, the ques-
tion whether or not there was a custom, certain,
uniform, and generally acquiesced in in the neigh-
borhood where the farm in question was located,
as to the number of crates to be used for harvest-
ing onions. *Lowe* v. *Lehman,* 15 Ohio St., 179.
The record in this case, however, discloses not only
that there was a lack of proof as to the certainty,
uniformity and generality of the custom in the
neighborhood, but also that these elements were
wholly overlooked in the charge of the court to
the jury. There must not only be some evidence
in the record as to all the elements requisite to
constitute a valid custom, but those elements

should also be clarified and explained in the charge to the jury. We are therefore of the opinion that the court erred in its charge to the jury in respect to custom.

### The Charge With Reference to Contract of Lease.

Assuming that there was evidence sufficient to warrant the submission of the question of custom for determination as a question of fact, the jury might find that there was no such custom. Under such circumstances it would be for the jury to determine whether or not the contract of lease had been complied with with reference to the number of crates to be furnished by the defendant. Of course this principle would also be applicable if there was not sufficient evidence to warrant the submission of the question of custom to the jury. Under the contract, if no custom existed, the defendant was required to furnish such number of crates for the caring of the crop as was reasonably necessary under all the facts and circumstances of the case for that purpose. The contract of lease being wholly in writing, and unambiguous in character, it was for the court to construe it, and not the jury. The proposition on which this assertion is based is fundamental, and the rule has been applied in the trial of jury cases in Ohio time without number.

An examination of the charge in this case discloses that the interpretation of the contract with respect to the number of crates to be furnished was left to the determination of the jury. We quote as follows from the charge:

"It is claimed by the plaintiff, and the sole claim of the plaintiff, that the damage for which she

is seeking a recovery resulted from the failure of
the defendant, Mr. Hough, to furnish crates with
which to harvest the crop of onions raised by
the plaintiff, through her husband and persons
employed by her, upon the farm of the defendant.

\* \* \*

"As previously stated, the feature of the con-
tract about which she complains, or which she
alleges, is the failure of Mr. Hough to furnish the
crates with which to harvest the crop in question.
Now, what his duties were in that respect is the
first issue that will confront you for your deter-
mination, as you consider the issues of the case,
and, to determine what his duties were, as specified
in this contract, you will look to all the evidence,
and from it determine what the circumstances were
surrounding the parties at the time they entered
into this contract, what the custom was with refer-
ence to onion farming, and the use of crates in
connection therewith in the vicinity in which this
farm was located, and that custom is material
only at the time this contract was entered into and
during the period covered by it, having examined
into the situation and the custom of the com-
munity at the time, and the terms of the contract
as you find them in it.

"The contract itself is an exhibit in the case,
and will be with you in your jury room, and you
may look to it to determine its terms, and you
will, from all these things, determine whether or
not Frank Hough has substantially complied with
any promises or agreements he may have made
in that contract to furnish crates for the harvesting
of the onion crop in question.

"If, after your consideration, you find that he

has complied substantially with the requirements
of the contract, as shown by all the facts disclosed
by the evidence in the case, then you need go no
further with the matter, but it will be your duty
to return a verdict for the defendant, then and
there.

"If, on the other hand, after such consideration
of the matter, you conclude that Mr. Hough has
not substantially complied with his contract, and
you also find that the plaintiff, Mrs. Stone, has
complied with her part of the contract, or that
performance on her part has been prevented or
defeated by the nonperformance by Mr. Hough of
the thing he was to do—I mean, the furnishing of
the crates, because that is the only thing about
which there is any complaint whatever, so far as
this question is concerned—the only complaint
against Mr. Hough, if you find that Mrs. Stone
has performed her part of the contract, and he
has not, then your next consideration will be to
weigh the evidence and from it determine the
amount of damage that the plaintiff, Mrs. Stone,
has suffered from the failure of Mr. Hough to per-
form his part of the contract in not furnishing
the crates, as you find he was required to do, if
you do so find he was required to do."

From the above quotation it is apparent that
the court did not leave it to the jury to determine
whether or not the defendant had complied with
the contract by furnishing such number of crates
as were reasonably necessary to care for the onion
crop in question, but left it to the jury to examine
the contract and find whether or not the defendant
had complied with it with respect to crates. To
adequately charge the jury on this branch of the

case, it was necessary for the court to tell the jury what would and what would not constitute a compliance with the contract on the part of the defendant in furnishing such crates. The court therefore erred in leaving the interpretation of the contract of lease to the jury.

### The Charge With Reference to Damages.

If the affirmance or reversal of the judgment depended upon the question as to whether the court properly charged as to the measure of damages, we would hesitate to hold that the court below committed reversible error with respect thereto. The plaintiff's claim as to damages was divided into three elements as follows: First, the claim for additional expense of employing labor to harvest the onion crop by reason of lack of sufficient crates with which to do it; second, the claim for damages which resulted to the onions which were harvested, by reason of not having crates in which to gather them; third, the claim for damages for that part of the crop which was not harvested at all, in so far as such failure to harvest was caused by the failure of the defendant to furnish crates.

As to the first element of damage, we think the court should have limited the amount of recovery to such additional expense actually incurred as was reasonable, and such as was necessary, over and above the expense for labor required under the contract, if the required crates had been furnished.

As to the second element, we are of the opinion that the court could have more definitely stated the actual measure of damages, and that it would be the difference between the fair market value of

plaintiff's share of onions at the time and place of the division of them, with the number of crates which the defendant actually furnished, and the fair market value of plaintiff's share of onions at the same time and place, assuming that defendant had furnished the number of crates he was required to furnish. A statement in the charge to this effect would in no sense render unnecessary the language which was used by the trial judge, but is necessary to complete it.

With reference to the third element of damage, the measure of damage should also have been given, and if there was a total loss of the unharvested crop, due to failure to furnish crates on the part of the defendant, the plaintiff, as to that unharvested crop, would be entitled to recover the fair market value thereof at the time and place of division, if defendant had furnished the required number of crates.

With reference to the charge of damages generally, we may add that the court should have explained to the jury the principle that it was the duty of the plaintiff at all times to make reasonable efforts to mitigate the damages of the defendant.

We believe there is no prejudicial error appearing upon the face of the record except such as has been indicated heretofore in this opinion.

For the reasons indicated, the judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

RICHARDS and YOUNG, JJ., concur.