No. 17,451.

UNION OIL COMPANY OF CALIFORNIA *v.* FELIX R.
LINDAUER AND JULIUS LINDAUER.

(280 P. [2d] 444)

Decided February 14, 1955.   Rehearing denied March 14, 1955.

Mr. ALLYN COLE, attorney for plaintiff in error.

Mr. ROBERT DELANEY, Mr. KENNETH BALCOMB, attorneys for defendants in error.

*En Banc.*

MR. JUSTICE BRADFIELD delivered the opinion of the Court.

This case involves alleged breaches of the terms of a written lease of real estate. Plaintiff in error was plaintiff and defendants in error were defendants in the trial court and herein will be designated as they there appeared.

In December, 1950 plaintiff and defendants entered into a written lease, plaintiff leasing to defendants certain lands, part for livestock grazing and part for farming, for five years for $10,000.00, with an option to renew for a like term, on conditions. The lease money for the primary term was paid in advance. Thereafter, August 11, 1953 and December 17, 1953 plaintiff company served notices on defendants, declaring violations of the terms of the lease by defendants; terminating same therefor as of December 31, 1953; and tendering therewith its check for $4,000.00, the unearned lease money which had been paid in advance. March 1, 1954 plaintiff filed its complaint alleging the violations of the lease by defendants in permitting others to use leased lands without the written consent of lessor, and without retaining exclusive control of the livestock grazed thereon; praying that the lease be adjudged terminated and for possession.

Defendants in their answer admit the lease, but deny violations of its terms.

Trial was to the court which entered a judgment dismissing the action. Motion for a new trial was denied.

The parts of the lease here pertinent are:

"* * * leased under the terms herein provided and for the purpose of livestock grazing, and farming and for no other purpose. * * * In the event that this lease is cancelled during the primary term for any reason other than termination by lessees, lessor agrees to refund said unused rental * * *.

"Lessees further covenant and agree that in using the

leased premises or any part thereof for grazing purposes, the same shall be done in a proper and husbandlike manner, having due regard for the preservation and protection of the ranch.

\* \* \*

"The use of the leased premises is *personal to lessees, and to the survivor of them, and lessees *shall not allow the use of all or any part of the leased premises by other parties without first obtaining the written consent of lessor*, and no assignment sublease or incumbrance of this lease or any interest therein shall be valid without the written consent of lessor first obtained, provided, however, that *nothing herein shall be construed to preclude the lessees from making or entering contracts or agreements for the pasturage of livestock of third parties* on the lands the subject of this lease *so long as said livestock shall be within the exclusive control of said lessees.

"In the event of the failure or refusal on the part of the lessees to comply with any of the terms and conditions herein contained, this lease *shall at the option of lessor become in default* and lessor shall take all necessary action to cancel the lease and retake full possession of the leased premises."

(Emphasis supplied)

The court entered its findings which we summarize as follows:

(1) A lease between plaintiff and defendants was for 8215.88 acres for farming and livestock grazing; providing in part, that "the use of the leased premises is personal to the lessees;" that "lessees shall not allow the use of any part of the leased premises by other parties without first obtaining the written consent of lessor;" subject to the proviso that lessees shall not be precluded from entering into contracts for the pasture of livestock of third parties on the leased premises so long as the said livestock shall be within the exclusive control of said lessees. That the language "so long as said livestock shall

be within the exclusive control of said lessees," means so long as such livestock itself as distinguished from the grazing lands on which they graze shall be entirely under control of the lessees themselves and not others.

(2) That in violation of the unequivocal language of the lease, defendants in 1952 permitted one Redd to run sheep on the leased premises for a consideration, without lessor's consent. The sheep were herded by Redd's own herder. Defendant lessees told Redd how many sheep, where and how long they could be grazed, when they should be moved and how long they could be held in one place.

(3) Further, defendant lessees in 1953 again violated the lease permitting Louis Lindauer and Wilbur Gavin to graze 900 sheep (which included 100 sheep of defendants) on leased land in "West Mountain," and to occupy a house and pasture a few horses on five or six acres of the "Granlee" place for $2,000.00 without lessor's consent. That Louis Lindauer, a part owner of the sheep, was hired to supervise the grazing operations under orders of the defendants.

(4) Further, that defendant lessees again in 1953 violated the lease by permitting the Latham Brothers to range 100 cattle on the leased land for $500 without plaintiff's consent, that defendants supervised by keeping track of the number of cattle on the premises; Lathams owned or controlled lands adjacent with no fence between, so that cattle moved back and forth on said lands, without lessor's consent; that Robert Latham or a cattle pool rider was in charge to avoid what was believed to be "trespass conditions."

(5) There was no abuse or overgrazing shown. The defendant lessees supervised the grazing operations to an extent. "The rights of the defendants under the lease are of considerable value to them * * *. No serious substantial violation has been shown. It would be unconscionable to forfeit their rights on account of the violations shown."

The court's conclusions of law were: "(1) That the violations found are inconsequential. (2) That the violations are insufficient to work a forfeiture of the lease. (3) That plaintiff has established no claim for relief. (4) That judgment of dismissal follows."

The restriction of no overgrazing urged by defendants was but one of the lease terms, all of which must be given consideration. It must be assumed plaintiff had a purpose in specifying each term in its lease. Some of the material terms therein were found to be in "unequivocal language" that required no interpretation. From the evidence, the trial court found as a fact that some of the terms of the lease in question had been violated by defendants. It was specifically provided that upon a violation of any of its terms, the lessor had the option to terminate the lease.

■ "The law gives the lessor the right to impose restrictions in the lease on the right to assign or sublet the leased premises, and these restriction may be enforced by forfeiture of the lease and re-entry." Thompson on *Real Property* (Perm. Ed., 1940), vol. 3, p. 660, sec. 1429.

The instant case was not pleaded as a case in equity. It was an action to terminate the written lease for the violations of its terms. Defendants' answer was a denial of the violations; no claim was made that the violations were trivial, but only a denial of any violations charged. Plaintiff was within its rights to terminate the lease, and having tendered defendants the "unused rental" became entitled to possession of the leased premises.

■ "Yet when, by a reasonable construction, it appears that the contracting parties agreed that a forfeiture should take place upon the failure of one of the parties to comply with a material part thereof, courts will decree a forfeiture, in case the default or failure is satisfactorily established." Thompson on *Real Property,* supra, vol. 3, p. 704, § 1462.

"If such a covenant is contained within a lease and by a preponderance of the evidence it appears in that regard

that the lease has been breached, a finding by the trial court to that effect must result in a conclusion of law that the lease has been terminated, with a consequent judgment thereon decreeing a forfeiture." *Amling v. Bryan,* 78 Cal. App. 184, 248 Pac. 280, 281.

Defendants complain that this action should conform to the requirements of the Forcible Entry and Detainer Statute, C.R.S. '53, c. 58, which required a verified complaint.

■ ■ "Ordinarily, in the absence of express provision or necessary implication, a statutory action of forcible entry and detainer is not exclusive, but is cumulative with respect to any other remedy that a party may have." 22 Am. Jur., p. 917, § 13.

The pleading in this case clearly indicates that it was instituted under Rule 105, R.C.P. Colo., relating to actions concerning real estate.

The findings of the trial court on the facts are supported by competent evidence. Its conclusions of law, that the violations were inconsequential and insufficent to work a forfeiture of the lease, were error.

Judgment reversed, cause remanded, and it is ordered that judgment be entered for plaintiff; that the lease be adjudged terminated; and plaintiff have an order of restitution, and for its costs.

Mr. Chief Justice Alter concurs in the result; Mr. Justice Clark did not participate in the consideration of the case; Mr. Justice Holland dissents.

On Petition for Rehearing.

MR. JUSTICE BRADFIELD.

Upon consideration of defendants' petition for rehearing, **the** remanding order of our opinion is modified to read as follows:

Judgment reversed, cause remanded with direction to the trial court to vacate its judgment previously entered and now to enter judgment for plaintiff, conditional

upon payment by plaintiff into the registry of the court for the benefit of defendants of such sum as the trial court shall determine as proportional and proper on account of rental paid by defendants for the unused portion of the lease term.

As so modified, our original opinion is adhered to, and motion for rehearing denied.