SHAKER BUILDING CO. v. FEDERAL LIME & STONE CO.

(No. 69-13528—Decided August 3, 1971.)

Shaker Heights Municipal Court.

*Messrs. Benesch, Friedlander, Mendelson & Coplan* and *Mr. Richard L. Phillips*, for plaintiff.
*Mr. Richard J. Moriarty*, for defendant.

ROCKER, J. Defendant, Federal Lime & Stone Company, took occupancy of office space in a building owned by plaintiff under a written lease whose term was to run from September 1, 1966 to August 31, 1969. Defendant had previously occupied the same offices under a prior lease for a period of five years.

On or about the month of April of 1967, defendant requested additional space in the building necessitated by a large increase in its business activity. Plaintiff was unable

to accommodate defendant whereupon defendant informed plaintiff that it might become necessary to find quarters elsewhere and suggested that Shaker Building Company advertise the space, for which advertising defendant agreed to pay and did pay.

Another tenant in the same office building upon learning of defendant's plan to vacate, requested defendant's space. The other tenant, Process Power Company, had been for a number of years a tenant under written lease, but had refused plaintiff's offer to renew same when it expired in July of 1967 and was renting on a month to month basis, since they, too, required additional space which they had requested from plaintiff. Defendant's space, the testimony established, would have been most adequate and acceptable to meet Process Power's needs.

Officers of the Shaker Building Company without giving any reason for their actions peremptorily refused to rent the space occupied by defendants to Process Power.

Following the refusal, approximately six months later, both Process Power and defendant, Federal Lime, negotiated leases in other buildings, each of them vacating the Shaker building on or about November 30, 1967.

This suit was brought to collect rents alleged due and owing from defendant from the date of its vacating the premises to the termination of the lease date of August 31, 1969 in the sum of $5,602.90 and additional damages are asked in the amount of $706.99 as expenses incurred to facilitate re-rental of the premises.

Defendant has denied liability on the basis that plaintiffs owed a duty to mitigate damages by acceptance of Process Power as sublessee. Defendant also claims in a cross-petition the sum of $1,500.00 as damages resulting from its inability to sell to Process Power certain equipment that Process Power could have used had they been accepted as a sublessee.

The failure to accept Process Power as sublessee, the court finds from the evidence and testimony was not for cause with respect to conduct or type of Process Power's business, nor due to any unreliability of credit, nor for any

other reason made known to the court, nor, in fact, made known to the parties.

Plaintiff relies on its lease provisions, primarily, in the exercise of its right to refuse an assignment of the lease without cause, arbitrarily and by whim and caprice, if so desired.

The lease provision covering assignment and subletting is as follows:

"6. The lessee shall not, without prior written consent of the lessor, (a) assign or convey this lease or any interest under it * * *."

Another provision of the lease to be considered is a phrase contained in subsection (d) of Item 11, reading as follows:

"(d) If the lessee abandons the premises, or if the lessor elects to terminate lessee's right to possession only, without terminating the lease as provided above, the lessor may remove from the premises any and all property found therein and such repossession shall not release the lessee from lessee's obligation to pay the rent herein reserved. After any such repossession by lessor without termination of the lease, *the lessor may, but need not, relet the premises or any part thereof as agent of lessee to any person, firm, or corporation* and for such time and upon such terms as the lessor, in the lessor's sole discretion, may determine * * *." (Emphasis added.)

As stated in 21 A. L. R. 3d 539, there is pronounced disagreement among the various jurisdictions, and sometimes within a single jurisdiction, as to whether a landlord has a duty to accept or procure a new tenant for the purpose of mitigating the damages recoverable from a tenant who, prior to the expiration of his term, has abandoned or failed to occupy the premises under a lease or tenancy. Ohio is readily included within that description of confusion governing this question.

In *White* v. *Smith*, 8 Ohio App. 368, the court cites language from an Oklahoma decision setting forth alternatives available to a landlord, which include: "If a tenant wrongfully abandons leased premises before the expira-

tion of the term, the landlord may, at his election, * * * sublet the premises for the unexpired term for the benefit of the lessee to reduce his damages.''

The same case concludes with a citation whose import is that such mitigation of damages is a moral duty, but *not a legal duty*. (Emphasis added.)

A contrary view is found in *Bumiller* v. *Walker*, 95 Ohio St. 355, cited in 21 A. L. R. 3d 571, as holding ''* * * where, in discussing whether a surrender resulted upon the abandonment by the tenant of premises held under a tenancy, the court said that no surrender was shown by the actions of the landlord in accepting the key, advertising for a tenant, and *rerenting the premises, since these actions "became his legal duty."* (Emphasis added.)

A further citation found in A. L. R. 3d supra is the case of *Fried* v. *Cohn-Goodman Co.*, 28 Ohio Law Review 91, 7 Ohio Law Abs. 713, wherein the court held that it was the duty of the landlord to minimize the damages by renting the property at the best possible rent.

The foregoing is followed by numerous citations which support the theory that a landlord is under a duty to mitigate damages. Further citations, however, take the opposite position such as *Enquirer Bldg. Co.* v. *Menke*, 28 Ohio Nisi Prius N. S. 238, holding that a landlord who had not taken possession of the premises abandoned by his tenant was under no duty to mitigate damages by renting to others.

It is obvious, then, that a resolution of the question presented herein must found from sources other than Ohio case law. The texts on ''Landlord and Tenant'' generally appear to follow the most simplistic viewpoint, flatly declaring that no duty to mitigate damages exists in the absence of express provisions in the lease.

This court finds the greatest difficulty, however, in reconciling such a view as to mitigation of damages in situations involving breach of contract concerning leases of real estate and the generally held view in cases related to breaches of contracts concerning other subjects.

The general principle of mitigation of damages result-

ing from breach of contract is succinctly stated in 16 Ohio Jurisprudence 2d 19, as follows:

"The rule requiring that one injured by the act or omission of another must exercise reasonable care to minimize the damages or to prevent further loss applies to injuries arising from a breach of contract * * *."

Another statement of interest is that appearing in 22 American Jurisprudence 2d 33, wherein the following is to be found:

"The general doctrine of avoidable consequences applies to the measure of damages in actions for breach of contract. Thus, the damages awarded to the non-defaulting party to a contract will be determined and measured as though that party had made reasonable efforts to avoid the losses resulting from the default. * * * All that is required of the non-defaulting party—in measuring his damages—is that he act reasonably so as not unduly to enhance the damages caused by the breach * * *."

Further in section No. 34 of the same volume of American Jurisprudence 2d, one finds this statement: "If a reasonably prudent person acting under the facts and circumstances in which the non-defaulting party found himself would have minimized the claimed losses by entering into other contracts with a third party, this fact may be shown in reduction of damages * * *."

Again, 22 American Jurisprudence 203, sets forth: "* * * To the extent that the non-defaulting party has not acted reasonably and has thereby failed to avoid certain consequences which are now claimed as damages, the party who is in default may show those consequences in reduction of damages * * *."

At least one Ohio case, that of *Hough* v. *Stone*, 21 Ohio App. 444, treats the subject of mitigation of damages in consonance with the general rule regarding breaches of contract, although the contract consisted of a lease. Syllabus No. 10 of said case is as follows:

"10. Lessee must make reasonable efforts to mitigate damages resulting from failure of lessor to furnish crates for harvesting onions under contract."

The court is cognizant of the fact that in the *Hough* v. *Stone* case the lease contained specific provisions for furnishing crates and is not a case specifically on point except to illustrate the fact that leases are contract and that a breach of a lease does not per se exclude consideration of mitigation of damages.

In the case at hand, the lease was prepared by plaintiff and must be construed, in case of any ambiguity, strictly against the party who prepared it. While the lease before the court clearly states that no assignment may take place without prior consent, inherent, however, in that provision is the representation that an assignment is possible. This court is of the opinion that equally inherent in that provision is the representation that such prior consent will not be withhheld under any and all circumstances, reasonable or unreasonable. If that were the intent of the scrivener, such a provision should have been unequivocally stated, particularly in view of the unsettled status of the law in Ohio.

Another provision of the lease in question merits examination and that is Section 12, governing subordination of the lease; it reads:

"The lessor shall have the right at any time, and from time to time, to place upon the building and/or land on which the premises are a part, or upon the underlying leasehold estate, a mortgage or mortgages which shall be wholly prior to the rights of the lessee under this lease, and the lessee will upon demand execute any and all instruments deemed by the lessor necessary or advisable to subject and subordinate this lease, and all rights given lessee by this lease, to such mortgage or mortgages."

That provision is noted since it has been generally held that the basis of the harsh rule permitting the landlord the right to refuse re-rental, arbitrarily, after abandonment is that in theory the tenant by the contract of leasing has purchased a vested interest in real estate. (21 A. L. R. 3d 539.) Section 12 of this lease would appear to negate any granting of a vested interest in the property to the lessee.

It is the opinion of this court, therefore, that where provision is made in a lease permitting assignment of rights thereunder, limited only by the requirement of prior consent of the lessor, such consent may not be withheld unless the prospective assignee is unacceptable, using the same standards applied in the acceptance of the original lessee.

In the instant case, the court finds from a preponderance of the evidence that Process Power, the prospective assignee, had been a tenant of plaintiff for five years under leasehold, following which lease period it continued tenancy on a month to month basis, which fact, in itself, was indicative of Process Power being an acceptable tenant.

The court further finds from the evidence that Process Power was ready, willing and able to rent the space occupied by defendants, not only for the balance of defendant's term, but to extend the term and at increased rental.

Judgment is, therefore, entered in favor of defendant at plaintiff's costs.

With regard to defendant's cross-petition, the court finds that defendant's agreement to sell its office furnishings to Process Power, from which obligation Process Power was later released by defendant, does not set forth in fact or law a claim upon which relief may be held against plaintiff. The cross-petition is, therefore, dismissed at defendant's costs.

*Judgment accordingly.*