584

CYREL D. LOGAN, Plaintiff-Appellant, *v.* 3750 NORTH LAKE SHORE DRIVE, INC., Defendant-Appellee.

(Nos. 57494, 57605 cons.;

First District (3rd Division)—February 7, 1974.

Harold Stotland and Edward S. Margolis, of Teller, Levit & Silvertrust, of Chicago, for appellant.

Rudnick, Wolfe, Snyderman & Foreman, of Chicago (Lester D. Foreman and Stanley N. Gore, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, a shareholder-lessee of a cooperative apartment, commenced this action against the lessor corporation seeking a declaration of her rights relative to the subletting of her apartment and for damages for defendant's refusal to consider and approve a prospective sublessee. The case was tried without a jury. The trial court sustained defendant's motion for a finding and judgment at the close of plaintiff's case and entered an order dismissing the suit. Plaintiff appeals from that order.

In April of 1966 plaintiff purchased 124 shares of capital stock of defendant corporation, 3750 North Lake Shore Drive, Inc., and also executed a stockholders proprietary lease for the right to occupy apartment

2-H. In January 1969, plaintiff wished to sublet her apartment for the period commencing in the summer of 1969 and ending in the summer of 1970, and submitted a written request to the Board of Directors pursuant to the provisions of article II, paragraph 6(b) of the stockholders proprietary lease.*

No action was taken at the special meeting of the Board of Directors held on January 20, 1969. At the meeting on February 11, 1969, the Board tabled plaintiff's request "until additional information" was received by the Board. On April 21, 1969, plaintiff submitted to the Board a written request for approval of Mr. and Mrs. Joseph Herr as prospective sublessees. A special meeting of the Board was held on April 29, 1969. The minutes of that meeting contain the following:

> "Before considering the application of the proposed sublessee, the [Applications] Committee considered the desirability of approving the subleasing of apartments. In accord with the long-established policy of the building, The Committee decided not to approve the request of Mrs. Logan to sublet her apartment. The Committee therefore did not review the application of the sublessee and recommended to the Board that the application of Mrs. Logan to sublet apartment 2—H for a period of one year be disapproved."

The recommendation of the Applications Committee was unanimously adopted by the Board. On May 1, 1969, plaintiff delivered to the president of the defendant corporation a letter requesting a general meeting of the shareholders pursuant to article II, paragraph 5 of the above lease. Paragraph 5 provides, *inter alia,* that the decision of the Board is final, except that the aggrieved shareholder, within five days after notice of such decision, "may appeal from the decision to the stockholders of the lessor," by giving the president written notice of appeal. Under this provision, the president is required to call a special meeting of the stockholders. Their decision is final and conclusive. The record shows that such a meeting was never called.

Prior to the trial, plaintiff moved for a summary judgment. Defendant,

---

* "(b) The Lessee may sublet, for periods not exceeding five years at a time, all but not a part of the premises hereby demised, to a sub-tenant only with the previous written consent of the Board of Directors of the Lessor, pursuant to resolution of said Board adopted at any meeting duly and regularly called for that purpose, and by such form of sub-lease as shall be approved by the Board of Directors. Such approval, however, shall not operate to relieve the Lessee hereunder of any obligation for the payment of assessments or otherwise, but shall only be an approval of the sub-tenant as an acceptable occupant of the apartment. In case the application is refused, the stockholder in interest shall have the right to appeal to the stockholders, as hereinbefore specified in Paragraph 5 of ARTICLE II hereof."

in opposition to the motion, filed an affidavit of its president, stating in part that plaintiff had abandoned her request for a special meeting of the stockholders and had affirmatively advised the affiant that she did not wish to have such a meeting called. Plaintiff's motion was denied.

In the order entered by the court on January 31, 1972, dismissing plaintiff's proceedings, the court found that plaintiff failed to introduce sufficient evidence to establish a *prima facie* case for relief in the nature of declaratory judgment or for the assessment of any damages against the defendant. During the discussion which followed defendant's motion for a finding in its favor, the court reasoned that plaintiff's evidence was insufficient to establish a *prima facie* case for declaratory judgment as prayed in count I of the amended complaint insofar as the stockholders proprietary lease was not ambiguous in its terms as to the procedure to be followed in the event the Board of Directors denied a request to sublease an apartment. The court further stated that if the Board failed or refused to call a meeting of the stockholders, plaintiff's remedy would be to file a suit for a writ of mandamus to compel the Board to call such a meeting. As to the finding for defendant on count II of plaintiff's amended complaint (damages for breach of contract), the court explained: "First of all, she has to exhaust her remedies under the contract by asking that the Board of Directors be forced to call a meeting, and she has no damages until they act."

On appeal plaintiff contends:
> (1) that according to the provisions of the lease she is not required to appeal to the stockholders from an adverse decision of the Board of Directors prior to the commencement of a suit for declaratory judgment and damages;
> (2) that the power of the Board of Directors to withhold its consent to a proposed sublease must be reasonably exercised; and
> (3) that the finding of the court is inconsistent with the evidence in that she exhausted all of her internal remedies by requesting the Board to convene a special meeting of the stockholders.

Defendant maintains that a member of a voluntary organization, before bringing a lawsuit, must exhaust his remedies within the organization, and that the refusal to approve the sublease by the Board of Directors was generally reasonable in light of the needs and purposes of the cooperative arrangement.

■■ It is well established that members of voluntary associations are required to exhaust their internal remedies prior to instituting legal action to enforce certain rights. (*Johnson v. Schuberth* (1963), 40 Ill.App.2d 467, 476.) A member of a voluntary association necessarily agrees to the reasonable rules and regulations of the order. However, there are ex-

ceptional circumstances in which a court may intervene without the aggrieved party having exhausted his organization's remedies. (*Michel v. Carpenters' District Council* (1957), 12 Ill.App.2d 510, 513.) In *Hill-v. Mercury Record Corp.* (1960), 26 Ill.App.2d 350, 358, we held that provisions which do not involve compulsory arbitration nor afford an exclusive remedy and only require exhaustion of internal remedies prior to the maintenance of legal proceedings will be enforced. Furthermore, as noted in *Hill* and *Michel, supra,* the cases where the requirement of exhaustion of remedies is enforced are usually cases dealing with the internal discipline of the organization itself.

■■■ In support of their respective positions, both plaintiff and defendant cite and rely upon the case of *People ex rel. Keefe v. Women's Catholic Order of Foresters* (1896), 162 Ill. 78. In that case, plaintiff sought by writ of mandamus to compel the organization to restore her membership in the society after she had been expelled by the "high court." Although the by-laws of the society provided plaintiff with the right to appeal the expulsion at the next annual session, she did not avail herself of that remedy but, instead, filed her petition for a writ of mandamus. The court, in denying her petition, held at page 83:

"Where the controversy is concerning the discipline or policy or doctrine of the order of fraternity, the member must resort to the method of procedure prescribed by the association including the remedy by appeal, before invoking the power of the courts."

Distinguishing between controversies concerning proprietary rights of members and controversies concerning the discipline, policy or doctrine of the association, the court in *Keefe* at page 84 quoted from *Zeliff v. Knights of Pythias,* 53 N.J. Law 536:

" 'In determining whether courts will take jurisdiction [prior to exhaustion of internal remedies by the aggrieved party], a distinction must be observed between cases in which the association subjects its members to discipline for immoral conduct or for violation of the rules of the order, and those instances in which the member appeals to the court to secure property rights or to enforce money demands.' "

The rationale underlying the above distinction is obvious. As a general rule the courts were reluctant to allow individuals and associations to preempt the courts of their jurisdiction to settle controversies. Such preemption was contrary to public policy. (*Johnson v. Schuberth, supra.*) However, as an exception to the general rule, members of voluntary associations were *required* to exhaust their internal remedies prior to the commencement of legal proceedings to adjudicate and enforce their rights. With regard to discipline, policy or doctrine of an association, the

doctrine of exhaustion of internal remedies, as we now know it, became a practical necessity. The courts were relieved of the burdensome task of proceeding with lengthy and often complicated inquiries into the matters of policy. Where such matters of policy were concerned, and where the governmental structure of the association or organization provided some procedure whereby an aggrieved individual member could seek redress or an appeal within the association or organization, the requirement of exhaustion of internal remedies as a condition precedent to the maintenance of legal proceedings was considered to be in the best interest of both the association and the member. Generally, such a requirement did not prejudice the member's position or standing to seek redress in the courts, and the delay to the member caused by the requirement was greatly outweighed by the benefits gained in allowing the association to correct the alleged wrong or review its decision in the light of its overall policy. The association, in cases concerning discipline, policy or doctrine, may more quickly and effectively settle controversies which involve privileges, rather than rights, of membership.

In the instant case, the stockholders proprietary lease which plaintiff executed specifically states that the lessee may sublet her apartment. The right to sublet, as limited by the discretionary power of the Board of Directors, is a proprietary right, hardly a matter of discipline, policy or doctrine. If the Board of Directors may arbitrarily and unreasonably refuse to approve a sublease, plaintiff's right to sublet is virtually nullified. In light of the above, we hold that plaintiff was not required to exhaust the internal remedies provided in the lease. Her application to the court for declaratory judgment and damages without an appeal to the stockholders was proper.

## II.

Now, turning to the issue of the reasonableness of the action of the Board of Directors in refusing plaintiff's application to sublet, defendant in its brief concedes that the refusal of consent must be reasonable in the light of the significant needs and purposes of the cooperative arrangement. (*Mowatt v. 1540 Lake Shore Drive Corp.*, 385 F.2d 135, 137 (7th Cir. 1967).) In *Mowatt*, plaintiff brought an action for damages against the defendant corporation for its alleged unreasonable refusal to consent to a proposed sublease. On several occasions prior to the one in question the Board of Directors considered and approved applications to sublease. The District Court found the action of the Board of Directors to be reasonable and the Court of Appeals affirmed. It must be noted that the Board there considered the financial stability of the prospective sublessee as well as his general social background. The court, applying

590

Illinois law by following *Gale v. York Center Community Cooperative Inc.* (1960), 21 Ill.2d 86, and holding the consent limitation on lessee's right to sublease a valid restraint of alienation, held at page 137:

> "* * * the requirement of consent in the case at bar is valid if the power to withhold consent must be reasonably exercised in the light of the purposes of the arrangement, and would be void if it need not be."

The court in *Mowatt* found that there were generally two reasons for the inclusion of such a restraint in the transfer of a cooperative apartment: economic—if one tenant-shareholder fails to pay his share of the costs of operation (in this case, assessments) the others must make up the difference; and social—because of the close proximity of living quarters all tenant-shareholders have an interest in matters of common concern such as noise, pets, annoying habits of neighbors, and the like.

■■ In the case before us the only evidence introduced concerning the reasonableness of the Board's action was the minutes of the special meeting of the Board of Directors dated April 29, 1969. That exhibit clearly states that plaintiff's application was refused without a consideration of the proposed sublessee's qualifications but on the ground that it was the long-established policy of the building to deny such requests. Defendant argues on appeal that one of the significant needs and purposes of the cooperative arrangement is the need to maintain and perpetuate a high degree of permanency and stability in the occupancy of apartments. This may be so; however, defendant wishes us to consider on appeal matters relevant to needs and purposes which may have compelled the Board to refuse plaintiff's application as evidence. No evidence was presented by defendant at the trial and the trial court could not—as we may not—consider documents which were a part of the summary judgment proceeding and were never offered or received as evidence at the trial. *In re Estate of Enoch* (1964), 52 Ill.App.2d 39, 50.

It is our opinion that in a setting of this kind the Board of Directors of a cooperative arrangement must reasonably exercise their power to withhold consent to a proposed sublease upon consideration of the sublessee's qualifications in light of the economic and social reasons justifying the restraint itself. We note, parenthetically, that plaintiff's lease provides that the original lessee (in this case, the plaintiff) shall be liable for the payment of "assessments or otherwise" and that an approval of a sublease by the Board shall be construed on approval of the subtenant "as an acceptable occupant." Thus, under this lease, the economic consideration is greatly minimized.

■■ We further note that at least one other jurisdiction has taken the position of requiring a lessor to give reasonable consideration to the

qualifications of a proposed assignee or sublessee where the lessee, by the terms of his lease, may assign or sublet only with the consent of the lessor. In *Shaker Building Co. v. Federal Lime & Stone Co.* (1971), 28 Ohio Misc. 246, 277 N.E.2d 584, 587, the Ohio court held that "\* \* \* consent may not be withheld unless the prospective assignee is unacceptable, using the same standards applied in the acceptance of the original lessee."

■■ In the instant case we hold that the evidence presented by the plaintiff in her case in chief was sufficient to establish a *prima facie* cause of action for declaratory relief and for an award of damages. The evidence thus far presented by plaintiff, and standing alone, supports the claim that the Board of Directors' refusal of consent to a proposed sublease was arbitrary and unreasonable.

### III.

■■ Plaintiff's final contention is that the finding of the court is inconsistent with the evidence in that she exhausted all of her internal remedies by requesting the Board to call a special meeting of the stockholders. We agree. The evidence presented at trial established that on May 1, 1969, plaintiff delivered to the president of the defendant corporation a letter requesting a meeting of the shareholders. Although defendant filed an affidavit in opposition to plaintiff's motion for summary judgment which stated in part that plaintiff abandoned her request for a special meeting and affirmatively advised that she did not wish to have such a meeting called, and further set forth certain discussions of the Applications Committee as to the matters considered in denying consent to the proposed sublease, no such evidence was presented at the trial, nor can the affidavit be so considered when it was neither introduced nor received in evidence at the trial. (*Estate of Enoch, supra.*) The court explained its order dismissing plaintiff's case by stating that prior to commencing an action for damages and declaratory relief, plaintiff should have sued out a writ of mandamus to force the Board of Directors to call a meeting of the stockholders. As noted above, plaintiff was not required to "exhaust her remedies" by requesting the Board to call a special meeting, nor was she required to seek a writ of mandamus to compel the Board to call such a meeting. The stockholders proprietary lease which she executed merely provided that the lessee *may* appeal to the shareholders. Under the doctrine of "exhaustion of remedies," which we previously discussed, and according to the permissive language of the lease itself, plaintiff properly commenced this action subsequent to her notification by the Board that it had refused consent to the sublease.

For the foregoing reasons the order entered by the trial court on

January 31, 1972, dismissing the action for declaratory judgment and for damages, is reversed, and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

Reversed and remanded.

McNAMARA, P. J., and DEMPSEY, J., concur.