633 P.2d 586

**Ewald A. FUNK and Pearl S. Funk, husband and wife, Plaintiffs-Appellants,**

v.

**Melvin R. FUNK and Diane A. Funk, husband and wife, Defendants-Respondents.**

**No. 13310.**

Supreme Court of Idaho.

Sept. 2, 1981.

Melville W. Fisher, II of Green & Sullivan, Boise, for plaintiffs-appellants.

Randall C. Budge of Racine, Huntley & Olson, Pocatello, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a summary judgment which denied the relief sought by plaintiff-lessors, i. e., the termination of a farm lease. We affirm.

The principal question presented is the ability of a lessee to sublease without the consent of the lessor when the lease allows subletting conditioned on the lessor's consent and the lessor arbitrarily and capriciously withholds such consent.

In November of 1969, plaintiff-appellants Ewald and Pearl Funk [hereinafter lessors] leased certain farm land to Melvin and Diane Funk [hereinafter lessees] for a ten year period commencing January 1, 1970 and ending December 31, 1979. Semi-annual rental payments were required on or before March 1 and December 1 of each year. The written lease provided in pertinent part: "(e) That the Lessee shall have the right and privilege of sub-leasing or assigning this instrument provided that the consent of the Lessor is first obtained."

During early 1978 the lessees were desirous of subleasing the property for the 1978 crop year. In January, the then attorney for the lessees wrote a letter expressing the lessees' desire to sublet the property and indicated that the lessees would make both 1978 lease payments on March 1 to ensure that the entire 1978 rent was paid in advance. They also promised to supervise the subtenant's operations to assure that the land was farmed in a good and husbandry-like manner and that proper weed control was practiced. They also offered to provide any additional information concerning the sub-tenant that might be requested by the lessors.

In February, lessors responded ". . . that we cannot allow a sublease of any type" and declared ". . . that we do not intend to allow a sublease of .this property." In response to further correspondence from lessees' attorney, the lessors in February expressed their belief that the rental fee was below the fair rental value and again emphasized their refusal to allow a sublease, stating: ". . . we do not now or in the future wish to honor any subleasing of this property. We already have more information concerning the proposed sublessees than you can possibly assemble." Thereafter, an additional letter was written on behalf of lessors indicating that a sublease would be allowed if the lessees would assign one-half of the sublease proceeds to the lessors, if the lessees would pay the 1978 property taxes and if the lessees would agree to terminate the underlying lease on December 31, 1978. Thereafter, the lessees indicated they would farm the property themselves and would not sublease it.

Lessees did, however sublet at least a portion of the premises for the 1978 crop year. When lessors learned of that sublease in September of 1978 they served notice of termination of the lease agreement. When lessees refused to quit the premises, this action was commenced. In March, 1979, summary judgment was entered in favor of the lessees declaring the lease agreement to be in full force and effect. The lessees continued to farm the property through the final year of the lease, 1979, and lessors accepted semi-annual rental payments in March and December of both 1978 and 1979.[1]

Appellant-lessors had claimed below that the lessees had committed waste on the premises and appellant-lessors argue on appeal that factual issues remain regarding the alleged waste. We disagree. Lessees admitted removing certain hand irrigation lines, but there was no evidence or even

---

1. We do not discuss the possible application of the doctrine of waiver because of our disposition on the basis of unreasonable withholding of consent.

allegation that the equipment would not be returned at the termination of the lease. As the trial court noted, no evidence or even allegations existed which, if accepted as true, would establish the commission of waste. On the contrary, it is without dispute that lessees greatly increased the value of the farm land.

■ Appellant-lessors next argue that an additional factual issue was raised which prevented the entry of summary judgment in that appellant-lessors submitted affidavits to the trial court claiming that they might have given the matter of a sublease further consideration. No contention is made that any such purported reconsideration was in any way communicated to the respondent-lessees and the lessors' claim of possible reconsideration is belied by their unequivocal communications. Lessors clearly and without equivocation informed the lessees that they would under no circumstances consent to a sublease. At a later time they informed the lessees that they would consent to a sublease only if lessees consented to a total rewriting of the lease agreement which would require lessees to shoulder much greater financial burdens than required of them in the lease. Lastly and conclusively, appellants-lessors filed the instant action seeking to oust lessees from the premises because they had not obtained the consent of the lessors to a sublease. The existence of an alleged change of mental state on the part of appellant-lessors does not create a material issue of disputed fact under the circumstances presented here. A genuine factual issue is not created by a mere scintilla of evidence. *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980); *Jones v. Jones*, 100 Idaho 510, 601 P.2d 1 (1979).

We now turn to the principal question presented here, *i. e.*, whether a lessor has an absolute right to withhold consent to a proposed sublease when the underlying lease grants to the lessee a right of assigning or subleasing upon the consent of a lessor.

■ A tenant holding under a lease for a definite period may sublet the premises in whole or in part in the absence of restrictions placed thereon by the parties or by statute. *Homa-Goff Interiors, Inc. v. Cowden*, 350 So.2d 1035 (Ala.1977); 49 Am. Jur.2d, *Landlord and Tenant*, § 481 (1970). That common law right is limited to the extent that a lessee may not sublet premises to be used in a manner which is injurious to the property or inconsistent with the terms of the original lease. *Williams v. Safeway Stores, Inc.*, 198 Kan. 331, 424 P.2d 541 (1967).

In the case at bar the lessees' right to assign or sublet existed by virtue of the parties' written agreement, as well as by virtue of common law, but was also subject to a contractual restriction. The effect of such contractual restrictions on a right to assign or sublet has not been previously presented to this Court. In *Enders v. Wesley W. Hubbard & Sons, Inc.*, 95 Idaho 590, 513 P.2d 992 (1973), a lease of grazing land was forfeited under a lease provision prohibiting assignment or subletting without the consent of the lessor. However, the sublease issue there was whether the actions of the lessee constituted a sublease or merely a granting of a license. In *Enders* the question of whether the consent of a lessor could be unreasonably withheld was not presented nor discussed.[2]

■ The appellant-lessors correctly argue that the traditional majority position is that unless the lease provides that the lessors' consent shall not be unreasonably withheld, a provision against assignment or subletting without the lessors' consent authorizes the lessor to arbitrarily withhold consent for any reason or for no reason. *Richard v. Degen & Brody, Inc.*, 181 Cal.App.2d 289, 5 Cal.Rptr. 263 (1960); *Union Oil Company of California v. Lindauer*, 131 Colo. 138, 280 P.2d 444 (1955); *Food Pantry Ltd. v. Waikiki Business Plaza, Inc.*, 58 Hawaii 606, 575 P.2d 869 (1978); *Jacobs v. Klawans*, 225 Md.

---

**2.** Also in *Enders* the lessees had covenanted not to assign or sublet without the lessors' written consent, while in the case at bar the lessees were granted the right and privilege of subleasing or assigning provided that the consent of the lessors was first obtained.

147, 169 A.2d 677 (1961); *Gruman v. Investors Diversified Services*, 247 Minn. 502, 78 N.W.2d 377 (1956); *Segre v. Ring*, 103 N.H. 278, 170 A.2d 265 (1961); *Dress Shirt Sales, Inc. v. Hotel Martinique Associates*, 12 N.Y.2d 339, 239 N.Y.S.2d 660, 190 N.E.2d 10 (1963); *B & R Oil Company, Inc. v. Ray's Mobile Homes, Inc.*, 422 A.2d 1267 (Vt. 1980); 49 Am.Jur.2d, *Landlord and Tenant*, §§ 423, 485, 499 (1970).

We find, however, an increasing number of jurisdictions departing from that traditional position and an increasing volume of authority that the consent of a lessor may not be *unreasonably* withheld. As stated in *Homa-Goff, supra*, "[the majority] rule, however, has been under steady attack in several states in the past twenty years; and this for the reason that, in recent times, the necessity of reasonable alienation of commercial building space has become paramount in our ever-increasing urban society." *Id.* at 1037. *See also Mowatt v. 1540 Lakeside Drive Corp.*, 385 F.2d 135 (7th Cir. 1967); *Warmack v. Merchants Nat. Bank of Fort Smith*, 612 S.W.2d 733 (Ark.1981); *Logan v. 3750 North Lake Shore Drive, Inc.*, 17 Ill.App.3d 584, 308 N.E.2d 278 (1974); *Shaker Building Co. v. Federal Lime & Stone Co.*, 28 Ohio Misc. 246, 277 N.E.2d 584 (1971); *Restatement (Second) of Property* § 15.2(2) (1977). *See generally* Kehr, *The California Landlord's Arbitrary Refusal to Consent to an Assignment*, 55 Calif.State Bar J. 108 (1980).

We deem the principal enunciated in the minority position to be based on more solid policy rationale than is the traditional orthodox majority's position. A landlord may and should be concerned about the personal qualities of a proposed subtenant. A landlord should be able to reject a proposed subtenant when such rejection reflects a concern for the legitimate interest of the landlord, such as assurances of rent receipt, proper care of the property and in many cases the use of the property by the subtenant in a manner reasonably consistent with the usage of the original lessee. Such concerns by the landlord should result in the upholding of a withholding of consent by a landlord. However, no desirable public policy is served by upholding a landlord's arbitrary refusal of consent merely because of whim or caprice or where, as here, it is apparent that the refusal to consent was withheld for purely financial reasons and that the landlord wanted the lessees to enter into an entirely new lease agreement with substantial increased financial benefits to the landlord. If the lessor is allowed to arbitrarily refuse consent to a sublease for what is in effect no reason at all, such would virtually nullify the right of a lessee to sublet. The imposition of a reasonableness standard also gives greater credence to the doctrine that restraints on alienation of leased property are looked upon with disfavor and are strictly construed against the lessor. *See, e. g., Chanslor-Western O. & D. Co. v. Metropolitan San. D.*, 131 Ill.App.2d 527, 266 N.E.2d 405 (1970); *Williams, supra; Smith v. Hegg*, 88 S.D. 29, 214 N.W.2d 789 (1974); *Kroger Co. v. Chemical Securities Co.*, 526 S.W.2d 468 (Tenn.1975); 49 Am. Jur.2d, *Landlord and Tenant*, § 485 (1970).

The burden of proving that the landlord's conduct is unreasonable rests upon the party challenging that conduct. *Haack v. Great Atlantic & Pacific Tea Co.*, 603 S.W.2d 645 (Mo.App.1980); *Jones v. Andy Griffith Products, Inc.*, 35 N.C.App. 170, 241 S.E.2d 140 (1978). *See also Arrington v. Walter E. Heller International Corp.*, 30 Ill.App.3d 631, 333 N.E.2d 50 (1975). A standard of reasonableness has been applied in cases which have *implied* a reasonable standard as well as those cases in which the lease contained express language that consent could not be unreasonably withheld. "Arbitrary considerations of personal taste, sensibility, or convenience do not constitute the criteria of landlord's duty under an agreement such as this * * * the standard is the action of a reasonable man in the landlord's position." *Chanslor-Western, supra*, 266 N.E.2d at 407, quoting *Broad & Branford Place Corp. v. J.J. Hockenjos Co.*, 132 N.J.Law 229, 39 A.2d 80, 82 (1944).

In the instant case, the proper standard by which to review the lessors' refusal to consent to the proposed sublease is one of a

reasonable person in the position of a landlord owning and leasing commercial farm land. Criteria to be utilized in application of that standard would include, but would not necessarily be limited to, assurances of proper farming practices and financial responsibility. In the instant case the record discloses no contentions by the landlord of the absence of these or any other criteria and hence we hold that the arbitrary refusal of the appellant-lessors in the instant case to grant their consent to the sublease was unreasonable.

We have considered appellants' remaining assignments of error and find them to be without merit.

Judgment is affirmed. Costs to respondents.

McFADDEN, BISTLINE and DONALDSON, JJ., concur.

BAKES, Chief Justice, dissenting:

I must dissent from the majority's decision to rewrite the lease provision in question. The lessee's right to assign or sublease the premises was unambiguous and unconditional in its requirement that the lessor consent. For the members of this Court to inject a new requirement that "the consent of the lessor may not be unreasonably withheld" is in effect to say that this Court may at any time disregard the intentions of the parties as expressed in their unambiguous agreement and rewrite the contract because a majority of this Court is of the opinion that it should be altered. The action of the majority constitutes not only a severe encroachment upon the right of persons to freely contract and to maintain control over their own property, but is also a serious intrusion into the province of the legislature.

In support of its action, the majority adopts a minority rule which it implies is the trend of the future. However, the majority's own citations manifest no such trend. Clearly, in the last year jurisdictions have split on the issue. *Compare B & R Oil Co., Inc. v. Ray's Mobile Homes, Inc.*, 422 A.2d 1267 (Vt.1980) (permitting arbitrary

refusal of consent) *with Warmack v. Merchants Nat. Bank of Fort Smith*, 612 S.W.2d 733 (Ark.1981) (prohibiting unreasonable withholding of consent). The majority cites only three states which have adopted the majority rule. However, there are at least five other recent cases not cited by the majority which in some manner either recognize the continuing validity or apply the majority rule. *Carleno v. Vollmert Tire Co.*, 36 Colo.App. 446, 540 P.2d 1149, 1151 (1975); *Robinson v. Weitz*, 171 Conn. 545, 370 A.2d 1066, 1068 (1976); *Kruger v. Page Management Co.*, 105 Misc.2d 14, 432 N.Y.S.2d 295, 300 (1980) (recognizing rule absent applicability of statute governing residential leases); *Herlou Card Shop, Inc. v. Prudential Ins. Co. of America*, 73 A.D.2d 562, 422 N.Y.S.2d 708 (1979). *See also Dutch Inns of America, Inc. v. United Virginia Leasing Corp.*, 134 Ga.App. 525, 215 S.E.2d 290, 291 (1975); *Moritz v. S & H Shopping Centers*, 197 Neb. 206, 247 N.W.2d 454, 456 (1976) (both cases applying the rule that lessee has no authority to assign the lease without consent of the lessor, but not addressing issue of unreasonable withholding of consent). Including the majority's citation to *Food Pantry v. Waikiki Business Plaza, Inc.*, 58 Hawaii 606, 575 P.2d 869 (1978), it appears that even in recent years the majority rule of allowing freedom in contracting continues to far outdistance the minority view.

More important than numbers, however, are the reasons behind the rules. The majority opinion states that "the minority position [is] based on more solid policy rationale than is the traditional orthodox majority's position," and that "no desirable public policy is served by upholding a landlord's arbitrary refusal to consent." I disagree. Upholding contracts and deeds voluntarily entered into between two parties is certainly a "desirable public policy." We said so unanimously in *Mollendorf v. Derry*, 95 Idaho 1, 501 P.2d 199 (1972). "The policy of the law is not to defeat a grantor's intent." 95 Idaho at 3, 501 P.2d 199.

The rationale behind the majority rule is supported by several basic concepts of property law.

"The reasons expressed in support of this rule are that, since the lessor has exercised a personal choice in the selection of a tenant for a definite term and has expressly provided that no substitute shall be acceptable without his written consent, no obligation rests upon him to look to anyone but the lessee for his rent . . . ; that a lease is a conveyance of an interest in real property and, when a lessor has delivered the premises to his lessee, the latter is bound to him by privity of estate as well as by privity of contract . . . ; that a lessor's right to reenter the premises upon lessee's default or abandonment thereof is at the lessor's option and not the lessee's . . . ; and that a lessee's unilateral action in abandoning leased premises, *unless accepted by his lessor,* does not terminate the lease or forfeit the estate conveyed thereby, nor the lessee's right to use and possess the leased premises and, by the same token, his obligation to pay the rent due therefor." *Gruman v. Investors Diversified Services,* 247 Minn. 502, 78 N.W.2d 377, 380 (1956) (citations omitted, emphasis in original).

The reasons given in the *Gruman* case are supported by the fundamental principle that the owner of property may transfer as much or as little control over his property as he sees fit. Freedom of ownership and control over one's own property forms the very basis of our social system. If that is to change, the proper forum for such changes is the legislature and not this Court.

The unsettling nature of the majority opinion is magnified when one realizes that the effect of the decision is to potentially subject every denial of consent to litigation and approval by a judge. Rather than the lessor being sure of his right to control his property by retaining an unrestricted right to deny consent to assign or sublease, by its decision today this Court has destroyed that right and vested in the courts the power to determine what the lessor *should have intended* and award control of the property based upon that determination. Certainly, as evidenced by this case, the parties will rarely agree on what is reasonable under particular circumstances. Is there any assurance that judges will be unified in their opinions on what is reasonable? The only assurance to be gained by the rule adopted by the majority today is that the parties' attempt to write their lease to avoid litigation will be frustrated. Had the parties wished or bargained to place a question mark on the lessor's right to withhold consent, they would have provided in the agreement that consent would not be arbitrarily or unreasonably withheld. *See* Annot., 54 A.L.R.3d 681 (1973). This Court should not foist that uncertainty off on them.

It is not clear from the majority opinion whether lessors in the future will have the right to contract for "an absolute right to withhold consent." The Restatement (Second) of Property, § 15.2, and *Warmack v. Merchants Nat. Bank of Fort Smith, supra,* the most recent case cited by the majority in support of its position, both so provide when they state: "The landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent." The broad language of the majority opinion suggests that even that provision would violate its "public policy." The Court's decision today will no doubt disrupt, dislocate and confuse thousands of existing contractual leasehold relationships which have provisions limiting the right to assign the lessee's interest.

When a court injects a new requirement that "the consent of the lessor may not be unreasonably withheld," as the majority has done in this case, it not only constitutes an interference with the right of persons to freely contract, but also interferes with the traditional rules for conveyancing real property. If, as the majority holds, it is against public policy for a lessor to provide in his lease that the lessee cannot assign his interest without the lessor's consent which may be denied for any reasons the lessor may give, including those which the majority concludes are arbitrary, the effect of such a rule is to modify the nature of the

estate conveyed by the lessor. One wonders what the majority of this Court will do when faced with the conveyance of a fee conditional, the condition being an event which the majority might conclude is arbitrary or unreasonable. As an example, it is not uncommon for a benefactor to convey real property to a city in fee conditional, the condition being that the property be used perpetually for a park to be named after the benefactor, *e. g., In re Hart's Estate*, 151 Cal.App. 271, 311 P.2d 605 (1957), and in the event that any part of the park is not used for that purpose then the property reverts to the heirs of the benefactor. If this Court, as it has done today, can modify the conditions of a grant of a lease, then it is only a short step to stating that it can also modify the terms of a grant of a fee conditional estate. The decision of the Court today will have a tremendously unsettling effect not only upon the conveyancing of real property but also upon the execution of contracts in this state. It is for this reason that the court in *Gruman v. Investors Diversified Services, supra,* in deciding to adhere to the majority rule, stated:

> "[W]e are motivated by the fact that the language of the assignment provision is clear and unambiguous and that many leases now in effect covering a substantial amount of real property and creating valuable property rights were carefully prepared by competent counsel in reliance upon the majority viewpoint. It would seem clear from the language adopted in all such cases that the lessors therein are entitled to place full reliance upon the responsibility of their respective lessees for the rentals they have contracted to pay. Should a lessee desire the right to assign or sublet to a suitable tenant, a clause might readily be inserted in the lease similar to those now included in many leases to the effect that the lessor's written consent to the assignment or subletting of the leased premises should not be unreasonably withheld. There being no clause in the present lease to such effect, we are compelled to give its terms their full force and effect as have the

courts of a majority of other jurisdictions." 78 N.W.2d at 381–82.

I would vote to carry out the contract as the parties negotiated it, and not as the majority of this Court thinks they should have negotiated it.